

DA 10-0323

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2011 MT 183

STATE OF MONTANA,

>Plaintiff and Appellee,

v.

ROBERT DaSILVA, JR.,

>Defendant and Appellant.

APPEAL FROM:    District Court of the Eighth Judicial District,
In and For the County of Cascade, Cause No. DC 09-137
Honorable Dirk M. Sandefur, Presiding Judge

COUNSEL OF RECORD:

>For Appellant:

>>Joslyn Hunt, Chief Appellate Defender; Garrett R. Norcott, Assistant
Appellate Defender; Helena, Montana

>For Appellee:

>>Steve Bullock, Montana Attorney General; Micheal S. Wellenstein,
Assistant Attorney General; Helena, Montana

>>John Parker, Cascade County Attorney; Great Falls, Montana

>>>>Submitted on Briefs:  April 20, 2011

>>>>Decided:  August 2, 2011

Filed:

_____
>>>>Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1     A jury in the Eighth Judicial District Court, Cascade County, found Robert DaSilva, Jr., guilty of failure to provide notice of address change as a sex offender, a felony, in violation of §§ 46-23-505, -504(5), -507, and -502(9)(b), MCA (2007), and resisting arrest, a misdemeanor.  DaSilva appeals, raising two issues.  We affirm and restate the issues as follows:

¶2     *1.  Did the District Court violate DaSilva's due process right by instructing the jury as a matter of law that DaSilva's previous Washington conviction was a "sexual offense"?*

¶3     *2.  Did the District Court err in granting a continuance of trial that was requested by the State to permit an amendment to the Information?*

### FACTUAL AND PROCEDURAL BACKGROUND

¶4     In 1998, DaSilva was convicted in Washington of second degree assault with sexual motivation.  On November 6, 2008, DaSilva notified the Great Falls Police Department (GFPD) of a change of his address to the Great Falls Rescue Mission (Mission), a homeless shelter.  After moving to a residence, DaSilva provided notice that he had moved back to the Mission on January 14, 2009.  In January and February a police officer attempted to verify DaSilva's location at the Mission, but was unsuccessful.  During this time DaSilva made no further reports to the GFPD.  On February 23, 2009, the officer received a tip regarding DaSilva's whereabouts.  After locating DaSilva, the officer attempted to talk with him, but DaSilva ran and was arrested after pursuit.

¶5     DaSilva was charged with failure of sex offender to provide notice of address change, a felony, and resisting arrest, a misdemeanor. He moved to dismiss the notice charge, contesting that he had an obligation to register in Montana pursuant to his Washington conviction. The District Court denied the motion, and DaSilva again raised the issue during settlement of jury instructions, arguing the issue was one of fact for the jury. The District Court disagreed and instructed the jury that "[u]nder Montana law, a person who has been convicted of committing a sexual offense is required to register as a sex offender" and, as a matter of law, DaSilva's Washington conviction of second degree assault with sexual motivation was a "sexual offense." The District Court granted a continuance of trial in conjunction with an amendment to the Information sought by the State to add a reference to § 46-23-504(5), MCA, to the notice charge.

¶6     The jury returned a guilty verdict on both charges, and the court sentenced DaSilva as a persistent felony offender to five years in the Montana State Prison, designating him a Tier 2 sex offender.[1]

## DISCUSSION

¶7     Section 46-23-507, MCA (2007), of Montana's Sexual or Violent Offender Registration Act (SVORA), provides "[a] sexual or violent offender who knowingly fails to register, verify registration, or keep registration current under this part may be sentenced to a term of imprisonment of not more than 5 years or may be fined not more

---

[1] DaSilva is incarcerated. In April 2011, we denied his petition for writ of habeas corpus challenging his denial of parole. Cause No. OP 11-0113, *DaSilva v. Green*.

3

than $10,000, or both." We have explained this provision provides the "actual offense" under SVORA. *State v. Bahr*, 2009 MT 378, ¶ 10, 353 Mont. 294, 224 P.3d 610. In turn, § 46-23-502(10), MCA, defines a "sexual or violent offender" as "a person who has been convicted of or, in youth court, found to have committed or been adjudicated for a sexual or violent offense." A "sexual offense" is defined as including certain Montana offenses as listed in § 46-23-502(9)(a), MCA, as well as "any violation of a law of another state, a tribal government, or the federal government that is reasonably equivalent to a violation listed in subsection (9)(a) or for which the offender was required to register as a sexual offender after an adjudication or conviction." Section 46-23-502(9)(b), MCA; *see also United States v. Juvenile Male*, 2011 MT 104, ¶¶ 4-5, 360 Mont. 317, ___ P.3d ___.

¶8      ***1. Did the District Court violate DaSilva's due process right by instructing the jury as a matter of law that DaSilva's previous Washington conviction was a "sexual offense"?***

¶9      DaSilva argues broadly that the District Court's instruction to the jury that his Washington conviction was a "sexual offense" usurped the role of the jury, lowered the State's burden of proof, and violated his right to due process guaranteed by the Fourteenth Amendment to the United States Constitution and Article II, Section 17 of the Montana Constitution. He argues that whether he was required to register in Washington for purposes of § 46-23-502(9)(b), MCA, presents "a question of historical fact." Thus, he reasons the State should have been required to call Washington authorities to testify as to that state's registration requirements.

4

¶10 The Judgment and Sentence from DaSilva's 1998 Washington conviction was submitted as an exhibit to DaSilva's motion to dismiss, and the first page of the document was offered by the State and admitted at trial by judicial notice over DaSilva's objection. The first page states DaSilva was found guilty by plea of Assault in the Second Degree with Sexual Motivation, with a date of crime of March 30, 1997. The Judgment references Wash. Rev. Code § 9.94A.030, wherein "sex offense" is defined to include "[a] felony with a finding of sexual motivation under RCW 9.94A.127 or 13.40.135," and "sexual motivation" to mean "that one of the purposes for which the defendant committed the crime was for the purpose of his or her sexual gratification." Wash. Rev. Code § 9.94A.030(33)(b), (34) (1997). The Judgment also references Wash. Rev. Code § 9A.36.021(1)(a), which defines the offense of assault in the second degree. There is stated at the bottom of the first page, with a place for notation, "[a] special verdict/finding of sexual motivation was returned on Count(s)." The place for notation is not marked. On the last page there is stated in all capital letters: "Any defendant convicted of a sex offense must register with the county sheriff for the county of the defendant's residence within 24 hours of defendant's release from custody," citing Wash. Rev. Code § 9A.44.130. DaSilva's initials are entered next to this statement.

¶11 DaSilva's motion to dismiss contended that his Washington conviction triggered no duty to register in Montana and, thus, no duty to notify police of his address change because: his Washington Judgment did not specifically order him to register; the Washington conviction was not a "sex offense" under Washington law requiring

5

registration there because no "check" was made next to the Judgment provision regarding a finding of sexual motivation, indicating the court did not make the requisite finding; and his Washington offense was not "reasonably equivalent" to a Montana sexual offense.

¶12 The State provided and incorporated the response it had filed to an identical motion DaSilva had filed in a 2008 Cascade County criminal proceeding alleging failure of sex offender to provide notice of address change, presided over by Judge Julie Macek. The State argued DaSilva's Washington conviction was a "sex offense" as defined under the Washington statutes referenced in the Judgment, and that the Judgment required DaSilva to register as a sex offender because he initialed next to the notice given of the registration requirement. Judge Macek had denied DaSilva's motion in the earlier proceeding, and the District Court took notice of the ruling and likewise found "persuasive the State's reasoning as set forth in its response . . . . And I similarly, and on those reasons, adopt and follow the reasoning and decision made by Judge Macek on this matter," and denied DaSilva's motion.

¶13 Before trial, the State proposed a jury instruction that DaSilva was required to register as a sex offender in Montana, as a matter of law.[2] DaSilva's counsel responded:

> It's my position that the State needs to prove, as an element of the offense, that Mr. Dasilva is a person required to register; thus, the State would have

---

[2] In *State v. Azure*, 2008 MT 211, ¶¶ 1-4, 9, 344 Mont. 188, 186 P.3d 1269, though not an appeal issue, the jury was instructed on a charge of failure to register as a violent offender under SVORA that the defendant, who had been convicted of robbery in Montana, "is a person required to register as a violent offender."

to prove that he's a sex offender. I did previously challenge that in a motion to dismiss, which the Court is aware and that motion was denied. However, I don't think that changes the fact that it's still an issue of fact that the jury has to make on it's own.

DaSilva's proposed instructions provided the definition of "sexual offense" under § 46-23-502(9), MCA, and separate instructions on each of the eleven Montana offenses enumerated in subsection (9)(a). He also proposed instructions under Washington law, including the definition of assault in the second degree, the definition of "sex offense" as including a felony with a finding of sexual motivation, procedures on finding sexual motivation, and the requirement that an offender convicted of a sex offense must register. DaSilva argued:

> [A]lthough it's convoluted, that's the state we're in because of the Legislature -- the legislation that we're dealing with here. I think the jury is capable of making that determination. It's unusual, I will grant you, but we'[re] dealing with an unusual statute. I think with the instructions I've provided, *the jury can determine those issues as a matter of fact*.

(Emphasis added.) This dialogue then followed:

> [THE COURT:] I just don't see how I can allow the jury to attempt to conduct legal analysis and make a conclusion of law that isn't even really a mixed question of fact and law, but is just really a pure question of law, given that there is no, or can be no, reasonable factual dispute, either as to what the language of the Washington statute was, what the language of the Montana statute is, and that the only underlying factual predicate here, is the true factual predicate, is the fact that he was convicted of the particular offense under Washington law as on the face of the judgment and there's no factual dispute there to be resolved.

. . .

> [Defense Counsel]: . . . I think there are fact issues.

7

THE COURT: What are they?

[Defense Counsel]: Beyond what I've already stated. I don't know that --

THE COURT: There are fact issues in the case as to the other essential elements of this. And so, when I say there's no fact issues, I'm only talking about the narrow discussion we're having today as it relates to whether or not the Washington statute that he was convicted under, constitutes an offense that requires him to register under our law.

[Defense Counsel]: Well, even within that narrow context, Your Honor, I think there are some facts that -- maybe I haven't really addressed adequately today. The judgment itself, part of the statute in Montana to determine if someone is a sex offender is, whether someone was required to register in another state, *I think it's purely a fact issue that the jury can look at the judgment to determine if there were th[ose] requisite findings of sexual motivation by the court and whether there was a finding by the Court that the Defendant was required to register.* I dispute --

THE COURT: Do we have a copy of the judgment here?

[State]: I'm not -- we've done this all before, Judge.

THE COURT: I know we have, I just don't recall it.

[Defense Counsel]: *That's kind of the issue that I think a jury could be -- it's not a problem for a jury, they can take a look at it and see what they think, whether the fact that those provisions were not checked on the judgment while others were.* I think the jury can easily ascertain from that, what the intent was.

[State]: That's nonsense. They don't have any education, they don't have any experience reading convictions, reading jury statutes, knowing how to do so, especially as a group of lay people. That's absurd to think that they could sit and come to a legal conclusion based on that.

(Emphasis added.)

8

¶14 The District Court rejected DaSilva's proposed instructions, ruling under the applicable Washington statutes that the offense of second degree assault with sexual motivation was a sex offense requiring registration as a sex offender in that state. The court reasoned that, "as a pure matter of law," the Washington offense was "a violation of law for which the law of another state required the offender to register as a sexual offender upon conviction or adjudication within the definition of Section 46-23-502(9)(b), MCA." Thus, the Washington offense was a sexual offense as defined under Montana law, requiring registration. Concerning DaSilva's argument that a finding of sexual motivation had not been "checked" on the Judgment, the court ruled:

> [A]ny alleged defect as to the form or content of the Washington judgment of conviction is a matter that Mr. Dasilva could have and should have taken up on appeal, or otherwise, under Washington law. There is no indication or assertion in this record that he has done that.
>      And therefore, that matter has been previously adjudicated under Washington law; that is the legal effect of the Washington judgment. And this Court is not going to allow Mr. Dasilva to argue, either as a matter of fact or law to this jury, that that ambiguity or argue, or apparent ambiguity on the face of the Washington judgment, is a basis for the jury to conclude that he was not convicted of a sexual offense under Washington law and as applicable under Montana law as charged in this case.

The court advised the parties "the bottom line then is" that the "State [] has the factual burden or the burden of proving the fact that Mr. Dasilva was, in fact, convicted of committing the offense of assault in the second degree with sexual motivation" and, upon such proof, "[t]he jury will, then, be instructed by the Court at the appropriate time that that is a sexual offense within the meaning of Title 46, Chapter 23, Part 5." Ultimately, the court gave Instruction 9 to the jury:

9

A person commits the offense of Failure Of A Sex Offender To Provide Notice Of Address Change if the person:

(1) is a transient;
(2) is a person required to register as a sex offender;
(3) is a person previously registered with a registration agency; and
(4) knowingly fails to report monthly, in person, to the registration agency with which he was previously registered.

To convict the Defendant of the offense of Failure Of A [] Sex Offender To Provide Notice Of Address Change, the State must prove each of these four elements beyond a reasonable doubt.

Instruction 10 provided, "[u]nder Montana law, a person who has been convicted of committing a sexual offense is required to register as a sex offender," and Instruction 11 stated, "[a]s a matter of law, the Washington offense of Assault In The Second Degree With Sexual Motivation, as defined by §§ 9.94A.030 and 9A.36.021(1)(a), Revised Code of Washington (RCW), is a 'sexual offense.'"

¶15 Under the standards of review, "'[a] district court has broad discretion in formulating jury instructions, and our standard of review is whether the court abused that discretion.'" *State v. Anderson*, 2008 MT 116, ¶ 17, 342 Mont. 485, 182 P.3d 80 (citation omitted). However, while the court's discretion is broad, "it is ultimately restricted by the overriding principle that jury instructions must fully and fairly instruct the jury regarding the applicable law." *State v. Hovey*, 2011 MT 3, ¶ 10, 359 Mont. 100, 248 P.3d 303; *see also State v. Thorp*, 2010 MT 92, ¶ 32, 356 Mont. 150, 231 P.3d 1096. "[I]nstructions must prejudicially affect the defendant's substantial rights to constitute reversible error." *Hovey*, ¶ 10. The issue of whether a defendant's due process rights

10

were violated is a question of law, and we review the district court's conclusion for correctness. *Anderson*, ¶ 17.

¶16 We are convinced upon a review of the trial proceedings that the District Court correctly ruled and instructed the jury. DaSilva was convicted under Washington law which provided "[a]ny adult . . . residing in this state who has been found to have committed or has been convicted of any sex offense . . . *shall register* with the county sheriff for the county of the person's residence." Wash. Rev. Code § 9A.44.130(1) (1997) (emphasis added).[3] The District Court correctly reasoned DaSilva "was required to register" because his conviction fit within the definition of "sex offense" under Washington law. DaSilva's contentions were legal arguments appropriately raised in a motion to dismiss. The only "factual issue" that DaSilva identified was in reality a legal one, challenging whether the Judgment imposed a requirement to register in Washington. Generally, "all questions of law, including . . . the construction of statutes and other writings . . . must be decided by the court." Section 26-1-201, MCA. The issues raised by DaSilva were legal in nature, which the District Court properly determined and then instructed the jury.

¶17 DaSilva cites *United States v. Gaudin*, 515 U.S. 506, 115 S. Ct. 2310 (1995). In *Gaudin*, the defendant was convicted by jury in the United States District Court for the

---

[3] *State v. Jenkins*, 995 P.2d 1268, 1270 (Wash. App. 2000) concluded the 1998 version of this statute was unconstitutional as applied for vagueness. We reached a similar conclusion concerning the 2005 version of SVORA in *State v. Knudson*, 2007 MT 324, ¶ 30, 340 Mont. 167, 174 P.3d 469. Neither party raises this issue with regard to DaSilva's duty to register here.

11

District of Montana of making material false statements in a matter within the jurisdiction of a federal agency in violation of 18 U.S.C. § 1001. *Gaudin*, 515 U.S. at 507-09, 115 S. Ct. at 2312-13. The Supreme Court held that Gaudin's right to have the jury determine guilt of every element of the crime was violated when the court instructed the jury that false statements allegedly made were material as a matter of law. *Gaudin*, 515 U.S. at 508, 522-23, 115 S. Ct. at 2313, 2320. However, *Gaudin* distinguished from its holding pure questions of law, recognizing that in both civil and criminal cases "the judge must be permitted to instruct the jury on the law and to insist that the jury follow his instructions." *Gaudin*, 515 U.S. at 513, 115 S. Ct. at 2315 (citing *Sparf v. United States*, 156 U.S. 51, 105-06, 15 S. Ct. 273, 294-95 (1895)).

¶18    Similarly, we have stated that "[i]nstructing the jury on the law necessary for the jury's rendering of a verdict in a criminal case is a duty within the exclusive province of the trial judge." *State v. Poncelet*, 187 Mont. 528, 542, 610 P.2d 698, 706 (1980) (citing § 26-1-201, MCA); *see also Thorp*, ¶ 36 (affirming a jury instruction in a sexual intercourse without consent case that the victim could not consent to sexual contact because she was under the age of sixteen at the time of attack). This is what the District Court did in this case. We conclude the court "fully and fairly" instructed the jury on the law in this case and did not violate DaSilva's due process rights.

¶19 ***2. Did the District Court err in granting a continuance of trial that was requested by the State to permit an amendment to the Information?***

¶20 The Information alleged DaSilva, "on or between November 18, 2008 and February 23, 2009, a registered sex offender in the State of Washington, failed to provide notice when he changed his address as required by Montana law," initially charging him with violation "of M.C.A. §§ 46-23-505, 46-23-507, 46-23-502(9)(b) (2007)." On September 30, 2009, after trial had been continued twice upon motion of the State and was scheduled for October 5, 2009, the State filed a motion for leave to amend the Information to narrow the referenced time frame to between January 14, 2009, and February 23, 2009, and add a reference to § 46-23-504(5), MCA, as another statute DaSilva had violated. While § 46-23-505, MCA, one of the SVORA provisions originally cited in the Information, requires an offender who has a change of name or residence or a change in student, employment, or transient status, to give notice of the change within 3 business days, *Bahr*, ¶ 7, § 46-23-504(5), MCA, additionally provides that "[a] transient shall report monthly, in person, to the registration agency with which the transient registered pursuant to subsection (1)(d)."[4] DaSilva conceded to the amendment to the time frame, but objected to the statutory addition, arguing it constituted a substantive amendment that was untimely under § 46-11-205(1), MCA, which provides "[t]he court may allow an information to be amended in matters of substance at any time,

---

[4] The Legislature added the latter provision to SVORA in 2007, along with clarifying that a transient "means an offender who has no residence," § 46-23-502(12), MCA, and a residence "does not mean a homeless shelter." Section 46-23-502(7)(b), MCA. Laws of Montana, 2007, ch. 483, §§ 19, 20, at 2173-75.

13

but not less than 5 days before trial . . . ." The parties argued the motion at a hearing the following day, October 1, 2009, four days before trial.

¶21 The State explained the request for amendment arose from defense counsel's observation, after reviewing the State's proposed jury instructions, that the instructions did not match the offense charged. One of the State's instructions referenced § 46-23-504(5), MCA, and stated that two elements of the offense were "[t]hat the Defendant informed his registration agency that he was a transient," and "[t]hat the Defendant failed to report monthly, in person, to the registration agency with which the [sic] he is registered." The State argued that SVORA should be viewed as a unitary scheme, that the addition of § 46-23-504(5), MCA, was not a substantive amendment because § 46-23-507, MCA, "is what constitutes the offense," and that the amendment was merely a "narrowing to specificity as to [] the manner in which he violated 507," consisting of the same factual theory—during the referenced time period DaSilva did not keep his registration current. DaSilva argued the amendment completely changed the State's theory and took away his prepared defense to the charge, which was that his transiency status had not changed, and therefore a directed verdict was possible in his favor. Although agreeing with the State that SVORA should be viewed as a unitary statutory scheme, the District Court concluded that for purposes of applying the five-day time restriction of § 46-11-205(1), MCA, "this is, in fact, a proposed amendment as to substance, even though it does not change the basic factual proof. It is, nonetheless, a substantive change because of the distinction in the legal theory between -- on the one

14

hand, the original theory under 46-23-507 and 46-23-505(1) and (2) as opposed to the distinct legal theory under 46-23-504(5) and 46-23-507." Thus, the District Court denied the amendment.

¶22  The State then asked for a continuance of the trial to allow for amendment of the Information.  The State noted the parties had identified October 22 as an available trial date, and the State stated it would accept the added 17-day delay for purposes of a speedy trial motion DaSilva had filed.  DaSilva argued a continuance would render § 46-11-205, MCA, meaningless and prejudice him, taking away his prepared defense.  The District Court concluded that substantial prejudice would not result to DaSilva, beyond the short delay, because the factual theory of the State's case was not changed and there was no showing of loss of evidence.  It reasoned that § 46-11-205, MCA, "contains no language indicating to me that the Court cannot, in the interest of justice, grant a continuance to the State to allow sufficient time to make the substantive amendment that it wants to make on its legal theory and to, thereby, facilitate trial on the merits on the same factual theory that existed at the beginning to the very end."  The District Court thus vacated its prior denial of the amendment and continued the trial until October 22.

¶23  On appeal, DaSilva presents the issue as one of statutory interpretation of § 46-11-205, MCA, arguing the District Court inserted authority into that statute to grant a continuance for the purpose of allowing a substantive amendment, which renders § 46-11-205, MCA, worthless.  The State argues the District Court's action comported with the plain language of § 46-11-205(1), MCA, that "[t]he court may allow an information

15

to be amended in matters of substance at any time, but not less than 5 days before trial," and that the issue is one to be reviewed for abuse of discretion. Neither party challenges the District Court's conclusion the requested amendment was substantive in nature.

¶24 Section 46-13-202, MCA, governs continuances and provides that a court "may upon the motion of either party or upon the court's own motion order a continuance if the interests of justice so require." Section 46-13-202(2), MCA; *State v. Garcia*, 2003 MT 211, ¶ 14, 317 Mont. 73, 75 P.3d 313. "All motions for continuance are addressed to the discretion of the trial court and must be considered in the light of the diligence shown on the part of the movant." Section 46-13-202(3), MCA. Accordingly, our standard of review is for an abuse of discretion. *State v. Duncan*, 2008 MT 148, ¶ 37, 343 Mont. 220, 183 P.3d 111 ("We review discretionary rulings, including a district court's decision to grant or deny a motion to continue, for abuse of discretion only."). "An abuse of discretion occurs when a court acts arbitrarily without conscientious judgment or exceeds the bounds of reason resulting in substantial injustice." *City of Missoula v. Robertson*, 2000 MT 52, ¶ 34, 298 Mont. 419, 998 P.2d 144. Further, in reviewing a continuance, we have stated "[a]n abuse of discretion can be present only when the district court's ruling prejudices the defendant." *State v. DeMary*, 2003 MT 307, ¶ 24, 318 Mont. 200, 79 P.3d 817.

¶25 DaSilva argues the District Court's ruling prejudiced him by preventing him from mounting a valid defense to the original charge. The State argues the interests of justice supported granting the continuance because the factual theory of the State's case

remained the same, with the amendment setting forth the applicable law for the facts in this case, and DaSilva was not substantially prejudiced by causing him to be unprepared for trial. The State reasons that any time it amends an information to add a reference to a statutory provision, a defendant may be precluded from raising a defense. The State claims it was diligent in preparing for trial and moved for a continuance because it discovered shortly before trial that DaSilva's registration at the Mission rendered him a transient under SVORA.

¶26 We are keenly aware that the question here is not "whether this Court would have reached the same decision, but, whether the district court acted arbitrarily without conscientious judgment or exceeded the bounds of reason." *Williams v. Union Fid. Life Ins. Co.*, 2005 MT 273, ¶ 39, 329 Mont. 158, 123 P.3d 213. The District Court could hardly have been faulted had it denied a continuance and required the State to try the case under the original Information. However, the statutes do not mandate denial of all continuances which are premised upon a request to amend an information, and we would not impose such a rule. We have previously noted the "varying terminology" within SVORA, *Azure*, ¶ 16, and that numerous amendments have been made to the scheme. *See Juvenile Male*, ¶ 5. The transiency statutes, upon which DaSilva was convicted, were added to SVORA less than two years before the offense here. The trial was delayed 17 days, and the State's factual contentions did not change, only its legal theory. While the defendant may still be prejudiced, we reasoned in *State v. Van Natta*, 200 Mont. 312, 321-22, 651 P.2d 57, 59, 61-62 (1982), that there was no prejudice to the defendant when

17

the information was amended as it was based on the same set of facts. DaSilva had three weeks to prepare for trial following the entry of the order granting the continuance on October 2, 2009. We cannot conclude under an abuse of discretion review that the District Court acted arbitrarily and erred by granting the trial continuance under these circumstances.

¶27 DaSilva also argues the amendment was invalid because it was not accompanied by an affidavit of probable cause and the District Court did not arraign him on the amended Information. The State responds that DaSilva did not object on these grounds and has waived review. Alternatively, the State points out that the motion to amend provided the "original affidavit supports the amendment," and argues the failure to hold an arraignment constituted harmless error.

¶28 In *State v. Longneck*, 201 Mont. 367, 372, 654 P.2d 977, 980 (1982), we concluded the purposes of arraignment "to call the defendant into court to answer the charges against him and to inform him of certain rights, were waived by the defendant when he proceeded to trial and defended" against the charge. "Arraignment may be so waived without any violation of the due process clause 'so long as the accused had sufficient notice of the accusation and an adequate opportunity to defend himself.'" *Longneck*, 201 Mont. at 372, 654 P.2d at 980 (quoting *Garland v. Washington*, 232 U.S. 642, 645, 34 S. Ct. 456, 457 (1914)). We conclude DaSilva forfeited these issues, and he has not sought review by plain error or other means. Thus, we decline to address them further.

¶29   Affirmed.


                                                    /S/ JIM RICE


We concur:


/S/ MIKE McGRATH
/S/ PATRICIA COTTER
/S/ MICHAEL E WHEAT
/S/ BRIAN MORRIS